UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CJ ADVERTISING, LLC, )<br>)<br>)<br>    Plaintiff, )<br>)<br>)<br>v. )<br>)<br>WHITEHARDT, INC., KEVIN WHITE, )<br>and THE McKERNAN LAW FIRM, PLLC, )<br>)<br>    Defendants. ) | Case No. 3:10-0214<br>Judge Trauger |

## MEMORANDUM

Pending before the court is the Motion to Dismiss Pursuant to Rule 12(b)(2) and 12(b)(3) filed by defendant The McKernan Law Firm, PLLC (Docket No. 36). For the reasons discussed herein, this motion will be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This is a trademark and unfair competition action. The plaintiff, CJ Advertising, is a "full service advertising agency in Nashville, Tennessee, that, among other things provide[s] advertising, marketing, and public relations services to law firms." (Docket No. 29 at 2.) Defendant Whitehardt is also a Nashville-based advertising company, specializing in attorney advertisements, and defendant White is a principal at Whitehardt. (*Id.* at 1, 5.) Defendant The McKernan Law Firm, PLLC ("MLF") is a personal injury law firm based in Baton Rouge, Louisiana. (*Id.* at 2.)

The plaintiff alleges that it introduced a "regional branding program" called "GET A

1

LAWYER GET IT DONE," and that it provides a "full advertising and marketing program for a firm in a given region" using that slogan. (*Id.* at 2.) The plaintiff claims to own a trademark and two trademark registrations containing the phrase "GET A LAWYER GET IT DONE." (*Id.*) The plaintiff also claims many trademarks "containing other 'GET' derivatives," such as "GET CARTER!," "GET SERIOUS, GET LUNDY," and "GET REAL, GET NORRIS." (*Id.* at 3-4.)

The plaintiff alleges that MLF uses the phrase "GET GORDON! GET IT DONE!" to promote its legal services in television commercials, and that defendants Whitehardt and White prepared and produced those commercials, without the plaintiff's consent or authorization. (*Id.* at 5-6.) The plaintiff claims that, through the production and distribution of the "GET GORDON! GET IT DONE!" commercials, the defendants have infringed on its trademarks in violation of federal law and engaged in unfair competition in violation of Tennessee state law. (*Id.* at 7-9.)

On March 4, 2010, the plaintiff filed this lawsuit against Whitehardt, White, and Gordon J. McKernan d/b/a MLF. (Docket No. 1.) McKernan is a principal at MLF and the "Gordon" referred to in "GET GORDON! GET IT DONE!" (*Id.* at 5.) On May 5, 2010, McKernan moved to dismiss the plaintiff's Complaint on personal jurisdiction and venue grounds (Docket No. 24), and, on May 18, 2010, the plaintiff voluntarily dismissed McKernan. (Docket No. 28.) That same day, the plaintiff filed an Amended Complaint against MLF, Whitehardt and White. (Docket No. 29.)

On July 16, 2010, MLF filed the pending Motion to Dismiss, arguing that: (1) MLF is not subject to personal jurisdiction and (2) venue is improper in this district. (Docket No. 36.) Alternatively, MLF requests that the court transfer this action to the Middle District of Louisiana. (*Id.*)

2

In support of the motion, MLF provides a declaration from McKernan. (Docket No. 38.) He states that MLF has no assets or property in Tennessee, has no attorneys licensed to practice in Tennessee, and, therefore, conducts no legal business or advertising in Tennessee. (*Id.* at 2.) Consistent with this, McKernan states that MLF has not used the "GET GORDON! GET IT DONE!" advertisement in Tennessee. (*Id.*) McKernan does concede that MLF has a contractual relationship with Whitehardt, which McKernan claims to be MLF's only contractual relationship with a Tennessee resident. (*Id.*) That is, Whitehardt "produces and places advertisements for [MLF], including advertisements using the mark 'GET GORDON! GET IT DONE!' . . . for dissemination in the Middle District of Louisiana."[1]

In support of its response, the plaintiff filed the declaration of its counsel, R. Parrish Freeman. (Docket No. 40 Ex. 6.) Freeman states that several of MLF's advertisements, some prominently featuring McKernan and using "GET GORDON! GET IT DONE!," are posted as exemplars of Whitehardt's work on Whitehardt's website. (*Id.*) In one of these commercials, Freeman claims, it is clear that McKernan is in a Nashville park located across the street from Freeman's office. (*Id.* at 2.) Freeman claims that another commercial for MLF features McKernan "situated on a stretch of what could be a Middle Tennessee highway, in that it is cut through sedimentary rock and surrounded by rolling hills." (*Id.*)

Moreover, Freeman claims, Whitehardt's website indicates that clients, such as MLF, develop lengthy relationships with Whitehardt involving significant contact with Nashville,

---

[1] MLF maintains that, on July 27, 2010, a registration for the mark "GET GORDON! GET IT DONE!" was issued by the United States Patent and Trademark Office. (Docket No. 43 at 2.) In the Amended Complaint, the plaintiff implies that, in its application to the USPTO, MLF omitted relevant facts about its rights to protect "GET GORDON! GET IT DONE!" (Docket No. 29 at 6.) The validity of the various marks is not at issue at this stage.

3

Tennessee. According to Freeman, the website "invites" potential clients to visit Whitehardt's "Music Row offices" and to "enjoy a lengthy and productive relationship" with Whitehardt. (*Id.* at 3.) Also, the website promises that Whitehardt will "closely watch and evaluate" the client's competition and offers "consulting sessions and ongoing oversight of intake staff and tracking procedures." (*Id.*) Freeman also notes that Whitehardt's website includes a testimonial from McKernan, which describes Whitehardt as "responsive, creative, diligent, and extremely knowledgeable," further suggesting that MLF and Whitehardt had a lengthy relationship that involved MLF making significant contact with Tennessee. (*Id.*)

In its Reply, MLF does not dispute that McKernan filmed various commercials in Nashville or that MLF has a business relationship with Whitehardt. (Docket No. 43 at 6)("MLF does not deny that it has engaged Whitehardt to produce television advertisements. MLF also does not deny that these television advertisements were filmed in Tennessee.") Attached to the Reply is the declaration of Pamela Jones, MLF's Marketing Director, which maintains that Whitehardt is only one of many third-party vendors that MLF uses to produce advertising material using "GET GORDON! GET IT DONE!" (Docket No. 43 Ex A.)

## ANALYSIS

MLF moves to dismiss the plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(2) (lack of personal jurisdiction) and 12(b)(3) (improper venue). In the alternative, MLF moves, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the Middle District of Louisiana.

**I.      Lack of Personal Jurisdiction under Rule 12(b)(2)**

As discussed above, MLF maintains that it is not subject to personal jurisdiction in Tennessee. A court deciding a motion to dismiss for lack of personal jurisdiction has three

4

options. It may (1) rule on the motion on the basis of the affidavits submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *See Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1272 (6th Cir. 1998). It is in the court's discretion, based upon the circumstances of the case, which path to choose. *Id.* In any proceeding, however, the party asserting jurisdiction has the burden of proof. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). Additionally, in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

Where, as here, both sides have submitted competing affidavits and requested a decision on that basis, it is entirely appropriate for the court to decide the jurisdictional issue based on the affidavits presented.[2] *Id.* When a court rules on a motion to dismiss for lack of personal jurisdiction based upon the affidavits, the party asserting jurisdiction need only make a *prima facie* showing of jurisdiction to defeat the motion. *Id.* In examining whether the party asserting jurisdiction has made this *prima facie* showing, the court is to construe the facts presented in the light most favorable to that party, and the court does not weigh or consider the conflicting facts presented by the other side. *Bird*, 289 F.3d at 871; *see also Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008)(referring to the plaintiff's burden in this context as "relatively slight").

---

[2] The plaintiff requested jurisdictional discovery (and attached proposed discovery) in the event that the court found that the plaintiff had not met its burden of establishing personal jurisdiction. (Docket No. 39 at 1.) Because the court finds that personal jurisdiction over MLF in Tennessee is sufficiently established by the affidavits submitted, there is no reason for jurisdictional discovery.

5

The issue of whether this court may exercise personal jurisdiction over MLF depends on the specific limitations of Tennessee's long-arm statute and the constitutional principles of due process. *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 477 (6th Cir. 2003). Tennessee's long-arm statute has been consistently construed to extend to the limits of federal due process, and, therefore, the two inquiries are merged, and the court need only determine whether exercising personal jurisdiction over MLF here is consistent with federal due process requirements. *Id.*

In order for due process to permit the exercise of personal jurisdiction over a non-resident defendant, such as MLF, that defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Youn v. Track, Inc.*, 324 F.3d 409, 417-18 (6th Cir. 2003)(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court has identified "general" jurisdiction and "specific" jurisdiction as distinct bases for personal jurisdiction – a demonstration of the contacts necessary for either basis is sufficient to establish personal jurisdiction. *Id.*

Specific jurisdiction exists when a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Id.* General jurisdiction, on the other hand, exists when a defendant's contacts with the forum are "substantial" and "continuous and systematic." *Id.* When personal jurisdiction is based on general jurisdiction, a state may exercise jurisdiction over a defendant, even if the suit does not arise out of the defendant's contacts with the state. *Id.* Here, however, the plaintiff only seeks to establish specific personal jurisdiction. (Docket No. 39 at 2.)

In *Southern Machine Co. v. Mohasco Industries, Inc.*, the Sixth Circuit established a three-part test for determining whether the exercise of specific jurisdiction was consistent with the principles of due process. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." 401 F.2d 374, 381 (6th Cir. 1968). While a motion to dismiss for lack of specific personal jurisdiction may be maintained based on prongs two and three of the *Mohasco* test, purposeful availment is the *sine qua non*, or absolutely indispensable, element of personal jurisdiction, and, therefore, disputes about whether or not there is specific personal jurisdiction in a given case often rise or fall on the issue of purposeful availment. *See Air Products and Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544, 550-51 (6th Cir. 2007).

Here, both parties recognize that, on this record, the only basis for personal jurisdiction over MLF is MLF's business relationship with Whitehardt.

### A. Purposeful Availment

Before a defendant may be sued in a forum, the defendant must "purposefully avail" itself of the "privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)(internal citation and quotation omitted). This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Id.*

7

Purposeful availment is "something akin to a deliberate undertaking," that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum. *Bridgeport Music*, 327 F.3d at 478 (internal quotation omitted). Purposeful availment exists "when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *Id.* (internal quotation omitted).

Here, MLF argues that its relatively slight contact with Tennessee indicates that it did not "purposefully avail" itself of the privilege of doing business in Tennessee. (Docket No. 37 at 1.) That is, MLF operates in Louisiana, does not advertise (or use the mark at issue) in Tennessee, and does not own property or conduct business here. (*Id.* at 7.) MLF argues that it "could not have reasonably anticipated being haled into a Tennessee court for trademark infringement and unfair competition as a result of [MLF's] contractual relationship with Whitehardt . . . [MLF] could only reasonably anticipate being haled into court within [the mark's] zone of use, as the zone of use is the only location where consumers could potentially be confused by the accused mark." (*Id.*.)

In response, the plaintiff points out that MLF concedes a contractual relationship with Whitehardt, a Tennessee-based corporation. Further, this relationship involves Whitehardt's producing advertisements for MLF and has required at least one (but probably many more) visits from McKernan, on behalf of MLF, to Tennessee. (Docket No. 39 at 4.) That is, all indications from the Whitehardt website are that Whitehardt's services "require constant contact and communication" between the company and its client, and McKernan's testimonial on the website

8

speaks to a relationship "involving multiple substantive interactions and a fairly protracted time frame."  (Docket No. 39 at 7-8.)  In light of all this, the plaintiff argues, MLF "cannot seriously argue that it could not foresee being haled into court in Tennessee after it knowingly sought out one Tennessee company to create advertising materials . . . ."  (*Id.* at 10.)

The mere fact that a defendant has a contract with a resident of the forum state is insufficient in itself to demonstrate purposeful availment.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-23 (6th Cir. 2000).  Where personal jurisdiction is premised on a business/contractual relationship, the court should consider the circumstances surrounding the relationship, including the parties' actual course of dealing, the "quality and quantity" of the contacts, and whether the parties set out "to create an ongoing business relationship" in the forum state.  *Tharo Systems, Inc. v. Cab Produkttechnik GMBH & Co.*, 196 Fed. Appx. 366, 370-71 (6th Cir. 2006).

Here, there was significantly more than an arm's-length contractual relationship.  Rather, construing the facts in the light most favorable to the plaintiff, MLF sought out and maintained a lengthy business relationship with a Tennessee company, which undoubtedly included phone calls, e-mails, and letters into the forum, along with visits from agents of MLF to Tennessee to, among other things, film and produce television commercials.

While MLF focuses on the connection between the plaintiff's specific causes of action and its contacts with the forum state (relying on its entirely unsupported "zone of use" argument), that focus is misplaced in the "purposeful availment" discussion, which focuses on the quality of the defendant's contacts with the forum state.  *Burger King*, 471 U.S. at 475.  The sufficiency of the connection between the contacts and the cause of action is explored under the

9

"arises from" *Mohasco* factor, discussed below. Here, there is no question that the defendant "deliberate[ly] under[took]" to engage in significant and substantive business in Tennessee, and the purposeful availment requirement is, therefore, met.

### B. "Arising From"

A cause of action "arises from" the defendant's contacts with the forum state when the cause of action has a "substantial connection" to the defendant's forum state activities, that is, "where a defendant's contacts with the forum state are related to the operative facts of the controversy." *Tharo*, 196 Fed. Appx. at 371 (internal quotations omitted).

In support of its argument that the plaintiff's cause of action does not "arise from" or have a "substantial connection" to MLF's in-state activities, MLF focuses on how courts analyze motions to dismiss *for improper venue* in the trademark infringement/unfair competition context. (Docket No. 37 at 8.) That is, MLF argues, these courts focus on "where the infringing activity occurred." (*Id.* quoting *Nine Point Mesa of Nashville, Inc. v. Nine Point Mesa of Lexington, Inc.*, 769 F. Supp. 259, 261 (M.D. Tenn. 1991) and collecting cases holding that "venue is proper in any district where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's product"). MLF maintains that, because the allegedly infringing activity did not occur in Tennessee, the plaintiff's "causes of action cannot be deemed to arise from the defendant's contacts with the forum state." (Docket No. 37 at 9.)

In response, the plaintiff argues that the "infringement and unfair competition" alleged in this case "are the direct result of MLF's reaching into Tennessee to contract with Whitehardt, a Tennessee company." (Docket No. 39 at 10.) That is, without the relationship with Whitehardt, the commercials using "GET GORDON! GET IT DONE!" would not have been created, and,

10

therefore, there would have been no lawsuit. (*Id.*)

Plainly, there is some attenuation between MLF's contacts with Tennessee and the cause of action; that is, the defendant is not accused of actually infringing on the trademark in this state; rather, its activities in this state provided an "avenue" to the alleged infringement.[3] Given the unique factual context of this case, it is not particularly surprising that neither party provides any helpful case law on whether this degree of connection between the activities and the cause of action is sufficiently "substantial" to meet the "arises from" standard.

That said, a common sense interpretation of the phrase "substantial connection" or "related to the operative facts of the controversy" indicates that the cause of action does "arise from" MLF's contacts here. MLF made contact with Tennessee in order to develop the commercials that the plaintiff alleges are infringing, and, without its contact with Tennessee, the commercials would not have been made. Particularly given the plaintiff's "relatively slight" burden here, calling the connection between the contacts and the controversy "substantial" is certainly reasonable.

This conclusion is strengthened by the decision in *Ultra-Images, LLC v. Franclemont*, 2007 WL 81832 (S.D. Fla. Jan. 8, 2007). This was a copyright infringement case in which the plaintiff (who resided in Florida) alleged that it owned the copyright in an image used by a

---

[3]In its Reply, supported by Jones's declaration, MLF attacks as "false" the plaintiff's "underlying premise" that the alleged infringement would not have occurred but for MLF's relationship with Whitehardt. (Docket No. 43 at 2.) MLF argues that Whitehardt is just one of several vendors used by MLF to produce advertisements using "GET GORDON! GET IT DONE!" (*Id.*) The vendors cited, however, are the company that produces MLF's website and companies that produce promotional items (hats, t-shirts, etc.) for MLF. (*Id.*) None of this is inconsistent with the "underlying premise" of the Amended Complaint, which is that Whitehardt produced and developed "GET GORDON! GET IT DONE!" for MLF in the course of the companies' ongoing relationship. (Docket No. 29 at 5-6.)

11

Tennessee defendant to promote its gentlemen's club. *Id.* at *1. The club was located in Tennessee and only advertised in Tennessee. *Id.*. The club's primary contact with Florida occurred when an agent visited Florida to obtain the copyrighted image. *Id.* at *2. The court found that the club was subject to personal jurisdiction in Florida because the evidence showed "entry into Florida by Defendants' employee to obtain and use a photograph without permission or payment to the Florida copyright holder." *Id.* at *6. That is, even though the image was not displayed in Florida, the fact that a key step in bringing about the infringement occurred in Florida was sufficient. Therefore, while not precisely on "all fours" with the facts of this case, *Franclemont* supports the common sense reasoning adopted by the court here – the plaintiff's causes of action "arise from" MLF's contacts with the forum.

### C. Reasonableness

Unless it is an "unusual case," if the first two prongs of the specific jurisdiction test are met, the reasonableness prong should be presumed satisfied, and the "specific assertion of personal jurisdiction is proper." *Tharo*, 196 Fed. Appx. at 372 (internal quotation omitted). In determining if the case is "unusual," the court should consider the defendant's arguments regarding: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy. *Id.; Intera Corp. v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

MLF argues that the burden of defending itself in Tennessee "is significant" because it is based in Louisiana. (Docket No. 37 at 10.) It also argues that the State of Tennessee has "minimal interest" in this action because Tennessee residents are unlikely to be confused by MLF's advertisement, which does not air in Tennessee. Finally, MLF notes that, subsequent to

12

the commencement of this case, it filed a declaratory judgment action against the plaintiff in the Middle District of Louisiana, seeking a "judgment that the mark 'GET GORDON! GET IT DONE!' does not infringe [the plaintiff's] marks." (*Id.* at 11.) MLF argues that the plaintiff may file a counterclaim in the Louisiana action and, therefore, "will not be denied relief as a result of the dismissal of this action." (*Id.* at 11.)

Here, there is nothing to indicate that this is an unusual case where, despite the established contacts, it is still unreasonable to exercise personal jurisdiction over the defendant. MLF points to no unique burden as an out-of-state defendant, and it clearly has not been an overwhelming burden to come to Tennessee in the past. Also, Tennessee clearly has a significant interest in the litigation, given that a Tennessee plaintiff alleges that two Tennessee defendants (and one out-of-state defendant) violated federal law and Tennessee common law partially through their conduct in this state. *See Franclemont*, 2007 WL 81832, at *7 (["the forum state] has an interest in adjudicating a dispute that revolves around an out-of-state corporation sending an employee to [the forum] for the purpose of infringing on the copyright of a [forum] plaintiff.")

As to the declaratory judgment action in Louisiana, it is somewhat troubling that two cases concerned with the identical issue between the same parties are pending in two federal courts. That said, the plaintiff filed this action two months prior to MLF filing the action in the Middle District of Louisiana, and the plaintiff should not be denied relief in its chosen forum simply because MLF later filed a mirror-image action in its favored forum.[4] The plaintiff has

---

[4]*See The McKernan Law Firm, PLLC v. CJ Advertising, LLC*, 3:10-cv-318 (M.D. La. filed May 5, 2010). CJ Advertising has filed a motion to dismiss this action under the "first filed" rule and that motion is pending. (*Id.* Docket No. 6.)

13

met its burden of establishing a *prima facie* case of personal jurisdiction. The defendant's Motion to Dismiss under Rule 12(b)(2) will be denied.

## IV. Improper Venue Under Rule 12(b)(3)

MLF also seeks dismissal under Fed. R. Civ. P. 12(b)(3), arguing that venue is improper in the Middle District of Tennessee. (Docket No. 37 at 11.) The court's finding that there is personal jurisdiction over MLF due to its activities within the Middle District of Tennessee resolves the venue issue. Under 28 U.S.C. § 1391(b), venue is proper in a federal question case in the "judicial district where any defendant resides if all defendants reside the same state." And, under 28 U.S.C. § 1391(c), a corporate defendant, like MLF, is deemed to reside, for purposes of Section 1391(b), in any judicial district in which it is subject to personal jurisdiction at the time that the action is commenced. 28 U.S.C. § 1391(c). As all defendants "reside" in Tennessee and MLF is subject to personal jurisdiction in this district, venue is proper.

## V. Transfer of Venue under 28 U.S.C. § 1404

Finally, MLF argues that, even if none of its grounds for dismissal are viable, the court should still transfer this action to the Middle District of Louisiana pursuant to 28 U.S.C. § 1404. (Docket No. 37 at 12.) Section 1404 states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

In determining whether to transfer a case pursuant to Section 1404(a), a district court should consider the plaintiff's choice of forum, along with a number of "case-specific factors," including the potential existence of a forum selection clause and "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other

14

public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Exp.*, 929 F.2d 1131, 1136-37 (6th Cir. 1991); *Smith v. Kyphon*, 578 F. Supp. 2d 954, 962 (M.D. Tenn. 2008)(Wiseman, J). Where the plaintiff resides in its chosen forum, unless the balance of the other factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009)(internal quotation omitted).

In support of its motion to transfer, after arguing that this case could be brought in the Middle District of Louisiana and following a lengthy discussion of the factors to be considered in a transfer motion, MLF spends just two paragraphs broadly asserting that (1) "a vast majority of the evidence" related to MLF's use of "GET GORDON! GET IT DONE!" is located in Louisiana, (2) "all evidence of confusion" will be located in Louisiana, and (3) Louisiana was where "GET GORDON! GET IT DONE!" was used and, therefore, Louisiana has more interest in this litigation than Tennessee. (Docket No. 37 at 12-15.)

The plaintiff is correct that, in arguing for transfer, MLF has not provided any facts or evidence bearing on the assorted factors, but has "provided less than a page of simple conclusory assertions of inconvenience." (Docket No. 39 at 12.) Clearly, given that the plaintiff resides in its chosen forum and that transfer of this action would undoubtedly inconvenience the Tennessee defendants, MLF has not demonstrated that this action should be transferred.

That said, the fact that two cases, apparently litigating the identical issue – whether MLF's use of "GET GORDON! GET IT DONE!" infringes on the plaintiff's trademark – are pending in two federal district courts appears inconsistent with judicial economy and the appropriate use of judicial resources. As noted above, the plaintiff has a filed a Motion to

15

Dismiss in the Middle District of Louisiana, arguing that MLF's later-filed declaratory judgment action should be dismissed so that this case can proceed more easily. While this court may entertain future briefing regarding bringing these cases together in one forum, it would be unsound to consider those options until the Middle District of Louisiana has ruled on the plaintiff's motion.

## CONCLUSION

For the reasons discussed herein, MLF's Motion to Dismiss Pursuant to Rule 12(b)(2) and 12(b)(3) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

16